UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS, | No. 2:21-cv-0153 TLN AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| L. ZARAGOZA, et al., | |
| Defendants. | |

Plaintiff is a former state inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1). For the reasons stated below, the Court will recommend that plaintiff's motion to proceed in forma pauperis be denied.

I. THREE-STRIKES PROVISION OF 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act of 1995 ("PLRA") was enacted "to curb frivolous prisoner complaints and appeals." Silva v. Di Vittorio, 658 F.3d 1090, 1099-1100 (9th Cir. 2011). Pursuant to the PLRA, the in forma pauperis statue was amended to include section 1915(g), a non-merits related screening device which precludes prisoners with three or more "strikes" from proceeding in forma pauperis unless they are under imminent danger of serious physical injury. 28 U.S.C. § 1915(g); Andrews v. Cervantes, 493 F.3d 1047, 1050 (9th Cir.

2007). The statute provides that "[i]n no event shall a prisoner bring a civil action ... under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

## II.   ANALYSIS

### a.   Strikes

Pursuant to the prisoner mailbox rule, plaintiff initiated this action on January 18, 2021. See ECF No. 1 at 15; Schroeder v. McDonald, 55 F.3d 454, 459 (9th Cir. 1995) (holding that matters by prisoner litigants are deemed filed on the date they are delivered to prison officials). Prior to that date, the Court determines that plaintiff had at least three cases dismissed that count as "strikes."

In making this determination, the Court takes judicial notice of the following United States District Court Cases: (1) Williams v. Aparicio, Case No. 2:14-cv-08640-PA-KK (C.D. Cal.) (dismissed February 5, 2015 as time-barred); (2) Williams v. Kerkfoot, Case No. 2:14-cv-07583-GW-KK (C.D. Cal.) (dismissed May 15, 2015 as time-barred); and (3) Williams v. Young, Case No. 2:14-cv-08037-PA-KK (C.D. Cal.) (dismissed May 19, 2015 as time-barred). See Belanus v. Clark, 796 F.3d 1021 (9th Cir. 2015).

The Court also takes judicial notice of the following United States Court of Appeals cases: (1) Williams v. Paramo, Case No. 18-55319 (9th Cir.) (dismissed September 19, 2018 as frivolous); (2) Williams v. RJD Medical Staff Building, Case No. 18-55709 (9th Cir.) (dismissed September 19, 2018 as frivolous); and (3) Williams v. Navarro, Case No. 20-56163 (9th Cir.) (dismissed January 13, 2021 as frivolous).

Thus, a review of the cases filed by plaintiff reveals that he is subject to 28 U.S.C. § 1915(g) and is precluded from proceeding in forma pauperis unless he was, at the time the complaint was filed, under imminent danger of serious physical injury.

### b.   Imminent Danger

The availability of the imminent danger exception "turns on the conditions a prisoner

faced at the time the complaint was filed, not at some earlier or later time." Andrews v. Cervantes, 493 F.3d 1047, 1053 (9th Cir. 2007). "Imminent danger of serious physical injury must be a real, present threat, not merely speculative or hypothetical." Blackman v. Mjening, 2016 WL 5815905, at *1 (E.D. Cal. Oct. 4, 2016).

To meet his burden under § 1915(g), plaintiff must provide "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003). "[V]ague and utterly conclusory assertions" of imminent danger are insufficient. White v. Colorado, 157 F.3d 1226, 1231-32 (10th Cir. 1998). See also Martin, 319 F.3d at 1050 ("[C]onclusory assertions" are "insufficient to invoke the exception to § 1915(g)...."). The "imminent danger" exception is available "for genuine emergencies," where "time is pressing" and "a threat ... is real and proximate." Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002).

Additionally, "the complaint of a three-strikes litigant must reveal a nexus between the imminent danger it alleges and the claims it asserts for the litigant to qualify for the 'imminent danger' exception of § 1915(g). In deciding whether such a nexus exists, courts will consider (1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would redress that injury. The three-strikes litigant must meet both requirements in order to proceed [in forma pauperis]." Stine v. Fed. Bureau of Prisons, 2015 WL 5255377, at *3 (E.D. Cal. Sept. 9, 2015) (quoting Pettus v. Morgenthau, 554 F.3d 293, 298-99 (2d Cir. 2009)). Because plaintiff is pro se, in making the imminent danger determination the Court must liberally construe plaintiff's allegations. Andrews, 493 F.3d at 1055. Moreover, although a court considering a motion to proceed in forma pauperis "should not attempt to evaluate the seriousness of a plaintiff's claims[, ...] it has never been the rule that courts must blindly accept a prisoner's allegations of imminent danger." Taylor v. Watkins, 623 F.3d 483, 485 (7th Cir. 2010). Claims concerning an "imminent danger of serious physical injury" cannot be triggered solely by complaints of past abuse. See Ashley v. Dilworth, 147 F.3d 715, 717 (8th Cir. 1998); Luedtke v. Bertrand, 32 F. Supp. 2d 1074, 1077 (E.D. Wis. 1999).

   Plaintiff alleges that he arrived at Deuel Vocational Institution ("DVI") in September 2020.  Upon arrival, he was housed in what he describes as "cruel and unusual conditions."  He alleges that his cell (1) had a non-working sink or toilet, (2) was dirty, and (3) had windows without glass, leading to exposure to severe cold and heat and to bugs, spiders, and cockroaches.  He further alleges that he was deprived of "adequate programming," was stuck in his cell most days, and received "harsh treatment" from DVI staff officers.

   Soon after his arrival at DVI, plaintiff claims that his counselor, L. Zaragoza, informed him that he was eligible for a minimum custody setting, such as a fire camp, where he would receive a higher credit rating and possibly earlier release.  However, at an October 2020 Institutional Classification Committee ("ICC") hearing, Zaragoza and M. Pierce denied plaintiff his "classification and crediting entitlements."  They also told plaintiff that he was ineligible for camp because he was a participant in the Correctional Clinical Case Management System ("CCCMS").  Plaintiff submitted an inmate grievance regarding the ICC decision.  While the appeal was subsequently granted, plaintiff was again informed that his participation in CCCMS prevented camp placement.

   Plaintiff claims that a week after filing the grievance, Pierce threatened him, saying, "[I]f I see my name in any paperwork[,] things can get real difficult for you around here[,] you know[.]  [T]here's a lot of blind spots and hidden spaces and I know everything about you[,] so you don't want people to know you were E.O.P. and you were programming on 50/50 yards[.]  [T]hey'll think your [sic] S.N.Y. and a snitch and you know what happens to snitches and SNYs[.]"  Around the same time, plaintiff's counselor Esparza also threatened plaintiff, claiming she had the power to direct other correctional staff to do her bidding if he continued with his grievance.

   Despite these threats, plaintiff continued to pursue a transfer to a fire camp.  To that end, he stopped taking his medication and asked to be removed from the CCCMS program.  In November 2020, an Interdisciplinary Treatment Team ("IDTT") meeting was held, and the doctors agreed to stop plaintiff's medication.  At the next IDTT meeting, however, plaintiff was informed that he could not be removed from the CCCMS program for at least 6 months because a treating physician continued to prescribe medication.  Plaintiff contends the treating physician

prescribed this medication intentionally to prevent his removal from the CCCMS program. Plaintiff filed another grievance regarding the denial of his request to be removed from CCCMS.

Plaintiff claims his First Amendment activities led to several assaults by the defendants in January 2021, causing him to now fear for his safety. In the first incident on January 5, defendant Jane Doe interviewed plaintiff concerning his request for removal from CCCMS. During this interview, Jane Doe told plaintiff to stop writing so many grievances or she would write him up. Plaintiff responded that he would write her up, too. Jane Doe said, "If you keep threatening me, I will slap your smart ass." Plaintiff responded, "Do it I dare you," to which Jane Doe slapped him across the face. On January 12, plaintiff complained that Estrada was incorrectly applying tape to his legal mail. When plaintiff asked for a grievance form to formally complain about this issue, Estrada told plaintiff that he would write him up for "unlawful influence." Plaintiff responded, "go ahead" and then threatened to sue Estrada. At this, Estrada punched plaintiff in the chest. On January 15, defendant Tovar entered plaintiff's cell to try to convince him to stop filing grievances. When plaintiff stepped towards Tovar defiantly, this defendant pushed plaintiff and said, "step back" and then "what's up, what you wanna do." Plaintiff began to raise his hands, and Tovar immediately put him in a choke hold, took him to the ground, and kicked him before leaving the cell.

Liberally construing the pleading, the Court finds that plaintiff does not include "plausible allegations" to suggest that he "faced 'imminent danger of serious physical injury' at the time of filing." Cervantes, 493 F.3d at 1055. To qualify for § 1915(g)'s imminent danger exception, the danger that plaintiff alleges he faces must be real, proximate, and/or ongoing at the time he filed his complaint. Id. at 1056; Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) ("[T]he harm must be imminent or occurring at the time the complaint is filed."). Incidents of past harm or the possibility of retaliation, particularly non-physical forms of retaliation like withholding documents or filing disciplinary charges against plaintiff, are insufficient. See Cervantes, 493 F.3d at 1057 n.11 ("[A]ssertions of imminent danger of less obviously injurious practices may be rejected as overly speculative or fanciful, when they are supported by implausible or untrue allegations...."); see also, e.g., Sierra v. Woodford, No. 1:07-cv-149 LJO GSA (PC), 2010 WL

1657493, at *3 (E.D. Cal. Apr. 23, 2010) ("long, narrative, rambling statements regarding a cycle of violence and vague references to motives to harm" are insufficient to show the prisoner faced "ongoing danger" as required by Cervantes); George v. United States, No. 3:19-cv-01557-BAS-BLM, 2019 WL 4962979, at *2 (S.D. Cal. Oct. 7, 2019) (alleging "a vast conspiracy involving surveillance, harassment, and intimidation undertaken at the hands of both the state and federal governments" to retaliate against the plaintiff before, during, and after incarceration insufficient to satisfy § 1915(g)).

Plaintiff appears to allege that he faces ongoing danger in the form of assaults for filing or threatening to file inmate grievances. A careful reading of his allegations, however, reveals that the defendants' initial response to the grievances was merely exasperation and verbal threats. It was only after plaintiff escalated the situations by goading or, in the context of the third incident, assuming a combative stance (defiantly stepping towards Tovar and raising his hands) that the alleged physical assaults occurred. Stated another way, plaintiff was not assaulted because of his First Amendment activities; he was assaulted because he became combative in words and/or conduct. While the Court does not condone assaults under either scenario, the dispositive inquiry here is whether plaintiff was facing imminent danger of serious physical injury within the meaning of § 1915(g) at the time he filed suit. The Court finds that he was not.

As plaintiff is a "three-striker" and was not in imminent danger when he filed this action, the Court will recommend that plaintiff be required to pay the $402 filing fee in full if he wants to proceed with the action.

## CONCLUSION

Based on the foregoing, IT IS HEREBY RECOMMENDED that plaintiff's motion to proceed in forma pauperis be DENIED, and plaintiff be directed to pay the $402 filing fee before proceeding with this action.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 2, 2022

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE