UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS, | No. 2:21-cv-0153 DJC AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| L. ZARAGOZA, et al., | |
| Defendants. | |

Plaintiff is a former state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion to dismiss plaintiff's first amended complaint. ECF No. 29.

I.   Procedural History

By order filed January 31, 2023, the undersigned screened the first amended complaint and found that it stated claims for excessive force and retaliation against defendants Estrada, Tovar, and Bawari, as well as a distinct claim of cruel and unusual punishment against Estrada. ECF No. 17 at 15. The complaint did not state any other cognizable claims and plaintiff was given the option of proceeding on the first amended complaint as screened or amending the complaint. Id. Plaintiff opted to proceed on his cognizable claims and voluntarily dismissed all other claims and defendants. ECF No. 18. Defendants have now moved to dismiss the complaint on the grounds that (1) it is clear on the face of the complaint that plaintiff failed to exhaust his

1

administrative remedies and (2) the claims against defendants are improperly joined. ECF No. 29.

## II. Plaintiff's Allegations

The complaint alleges that on December 10, 2020, defendant Bawari refused to remove plaintiff from the CCCMS mental health care program. ECF No. 6 at 8. Plaintiff filed an appeal about his request to be removed from the CCCMS program and was slapped by a female doctor during an interview about the appeal on January 5, 2021. Id. at 8-9. On January 12, 2021, plaintiff went to see Estrada and requested an appeal form so that he could file a grievance about his removal from CCCMS. Id. at 10. Estrada refused to provide the forms and when plaintiff said he would file a grievance about Estrada's refusal, Estrada said he would write plaintiff up for a rules violation. Id. When plaintiff responded that he would sue Estrada, Estrada punched plaintiff in the chest. Id. As a result of being punched, plaintiff had trouble breathing for several minutes and later developed bruises and experienced pain in the area of the punch for several weeks. Id. at 10-11. The day after the incident, Estrada told plaintiff "[i]f I find out you put paperwork on me that punch is peanuts what I'll do to you," which caused plaintiff to fear for his safety if he continued to pursue the grievance he filed regarding Estrada's excessive force. Id. at 11.

On January 15, 2021, Bawari and Tova came to plaintiff's cell in response to plaintiff's request to identify the woman who had slapped him on January 5, 2021. Id. at 11. Bawari told plaintiff that she did not know the woman's name and could not find it out, then told Tovar to "do something to him he keeps putting in paperwork pissing me and everybody off," before the two defendants walked away. Id. Tovar returned two minutes later and entered plaintiff's cell, telling him that he needed to stop "putting in paperwork" because it was "pissin everybody off and your gonna get hurt and not make it home." Id. at 11-12. Plaintiff then stepped toward Tovar, telling him "you don't tell me what to do," and Tovar responded by pushing plaintiff back, causing plaintiff to hit his head on the top bunk. Id. at 12. When plaintiff began raising his hands toward Tovar, Tovar rushed plaintiff and put him in a chokehold before taking plaintiff to the ground. Id. Tovar then got up, kicked plaintiff, and left the cell. Id. Upon leaving the cell, Tovar refused

plaintiff's request for medical care and told him "I dare you 602 me." Id.

Finally, on February 6, 2021, Estrada told plaintiff that he was going to have plaintiff put in a unit with inmates who had COVID-19 because plaintiff filed an excessive force grievance against him. Id. at 14. The following day, plaintiff was moved to a unit that was being used to house inmates who had tested positive for COVID-19 and he was placed in a cell with an inmate who was still complaining of symptoms of the virus. Id. Upon his transfer, plaintiff immediately began feeling symptoms of COVID-19, which he reported to medical. Id.

### III. Motion to Dismiss

Defendants move to dismiss plaintiff's § 1983 action for failure to exhaust administrative remedies. ECF No. 29 at 7-9. They argue that plaintiff must fully exhaust his administrative remedies before bringing suit, and that it is clear from the face of the complaint that plaintiff has not done so because imminent danger of serious physical injury does not excuse exhaustion. Id. Defendants further argue that the case should be dismissed because the complaint does not comply with Federal Rules of Civil Procedure 18 and 20. Id. at 9-10.

In opposition, plaintiff argues that he was excused from exhausting his administrative remedies because the grievance process was unavailable to him as a result of defendants' threats to harm him if he continued filing grievances. ECF No. 33 at 1-2. He further argues that in screening the complaint, the court determined that his claims were properly related. Id. at 2.

In reply, defendants reiterate that there is no imminent danger exception to the exhaustion requirement, and they further argue that plaintiff's claim that remedies were unavailable is not credible because his allegations show he was not deterred from filing grievances and he could have utilized the emergency grievance process if his safety was truly an issue. ECF No. 34 at 2-4. Defendants also acknowledge that their request for dismissal based on misjoinder was not appropriate, and instead request that if the case is not dismissed for failure to exhaust, the claims be severed or plaintiff be provided an opportunity to amend the complaint. Id. at 4 n.1.

#### A. Legal Standard for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a complaint will be dismissed for failure to state a claim if it makes only "a formulaic recitation of the elements of a cause of action" rather than factual allegations

sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). In order for the claim to be plausible on its face, it must contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014) (citations omitted).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), and construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted). The court will "presume that general allegations embrace those specific facts that are necessary to support the claim." Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). However, while pro se pleadings are held "to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam) (citations omitted), the court need not accept legal conclusions "cast in the form of factual allegations," W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981) (citations omitted).

     B.    Exhaustion

         i. Legal Standard

Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Under the PLRA, a prisoner must fully exhaust all available administrative remedies before bringing an action under §1983. 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").

////

1    While exhaustion is a mandatory requirement that will result in dismissal if not met, <u>Ross v. Blake</u>, 136 S. Ct. 1850, 1856 (2016), "inmates are not required to specially plead or demonstrate exhaustion in their complaints," <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, "the defendant in a PLRA case must plead and prove nonexhaustion as an affirmative defense," and it is the defendant's burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." <u>Albino v. Baca</u>, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citations omitted). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." <u>Id.</u> at 1166

"To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" <u>Id.</u> at 1171 (quoting <u>Brown v. Valoff</u>, 422 F.3d 926, 937 (9th Cir. 2005)). There are three situations wherein an administrative remedy is seemingly available, but a prisoner is not able to use it to obtain relief. <u>Ross</u>, 136 S. Ct. at 1859. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." <u>Id.</u> (citing <u>Booth v. Churner</u>, 532 U.S. 731, 736 (2001)). Second, the process "might be so opaque that it becomes, practically speaking, incapable of use." <u>Id.</u> Third, administrative remedies are unavailable when prison administrators bar inmates from using the grievance process "through machination, misrepresentation, or intimidation." <u>Id.</u> at 1860. Other than unavailability, there is no exception to the exhaustion requirement under PLRA. <u>Ross</u>, 136 S. Ct. at 1856.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), <u>overruled on other grounds by Albino</u>, 747 F.3d at 1168-69.

ii. <u>Discussion</u>

Defendant argues that it is clear from the face of the complaint that plaintiff did not exhaust his administrative remedies and that there is no imminent danger exception to the exhaustion requirement. ECF No. 29 at 7-9. In filling out the complaint form, plaintiff checked

5

1 both "yes" nor "no" when asked whether he submitted an appeal on Claim I and whether he
2 appealed his request for administrative relief to the highest level before filing the complaint. ECF
3 No. 6 at 4. For Claim III, he checked no for both questions. Id. at 14. In addition to those
4 selections, plaintiff asserted that he was in imminent danger of serious physical injury. Id. at 4,
5 14. While defendants are correct that there is no imminent danger exception to the exhaustion
6 requirement, plaintiff's allegations in the complaint that he was threatened with physical harm if
7 he filed or continued pursuing grievances he had already initiated related to the incidents at issue
8 are sufficient to make a claim that administrative remedies were unavailable to plaintiff. ECF No.
9 6 at 11-12, 14. Accordingly, it is not apparent from the face of the complaint that plaintiff has
10 failed to exhaust his administrative remedies. The motion to dismiss for failure to exhaust should
11 therefore be denied without prejudice to a motion for summary judgment on non-exhaustion
12 grounds.

        C.     Improper Joinder

            i. Legal Standard

15     A plaintiff may join multiple claims if they are all against a single defendant, Fed. R. Civ.
16 P. 18(a), and he may join multiple defendants where the right to relief arises "out of the same
17 transaction, occurrence, or series of transactions," and "any question of law or fact common to all
18 defendants will arise in the action," Fed. R. Civ. P. 20(a)(2). When parties are misjoined, "the
19 court may at any time, on just terms, add or drop a party. The court may also sever any claim
20 against a party." Fed. R. Civ. P. 21. However, "[m]isjoinder of parties is not a ground for
21 dismissing an action." Id.

            ii. Discussion

23     As defendants have acknowledged, dismissal of the complaint based on misjoinder is not
24 a proper remedy and the motion to dismiss on this ground should be denied. Id. at 4 n.1.
25 Defendants' request that the court sever the claims against Estrada from those against Bawari and
26 Tovar or provide plaintiff an opportunity to amend the complaint to comply with Rules 18 and 20
27 should also be denied. Id.
28 ////

The first prong of the test for permissive joinder "refers to similarity in the factual background of a claim." Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). "[P]ermissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League of Save Lake Tahoe v. Tahoe Reg'l Plan. Agency, 558 F.2d 914, 917 (9th Cir. 1977) (citation omitted). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966) (citing Fed. R. Civ. P. 2, 18-20, 42).

In arguing that the claims against defendants are improperly joined, defendants focus on plaintiff's retaliatory relocation claim and seem to have overlooked the excessive force claim against Estrada. See ECF No. 29 at 9-10. Even if the court assumed that the relocation claim does not stem from the "same transaction, occurrence, or series of transactions" as the claims against Bawari and Tovar, it is properly joined with plaintiff's excessive force claim against Estrada, see Fed. R. Civ. P. 18(a) (a party may assert "as many claims as it has against an opposing party"), and defendants do not argue that the excessive force claims are misjoined.

Regardless, the court finds that the excessive force claims are properly joined. Although the excessive force incidents with Estrada and Bawari and Tovar took place on two separate days, they both stem from plaintiff's attempts to pursue a grievance regarding Bawari's denial of plaintiff's request to be removed from the CCCMS program. While plaintiff does not have a claim against Bawari for that denial, the claims still arise out of the same series of transactions. Moreover, considering that plaintiff is proceeding on claims of retaliation against all defendants, common issues of fact among all defendants will likely arise regarding plaintiff's grievance history, particularly should defendants choose to pursue a motion for summary judgment on exhaustion. Defendants offer no other reason why the claims should be severed and the request to sever the claims should be denied.

IV.   Conclusion

For the reasons set forth above, defendants' motion to dismiss and alternative request to sever the claims should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 29) be DENIED without prejudice to filing a motion for summary judgment on the issue of exhaustion; and

2. Defendants' request to sever (ECF No. 34 at 4 n.1) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 15, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE