UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS, | No.  2:21-cv-0153 DC AC P |
| Plaintiff, | |
| v. | FINDINGS & RECOMMENDATIONS |
| L. ZARAGOZA, et al., | |
| Defendants. | |

Plaintiff is a former state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the court is defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies.  ECF No. 45.  As discussed below, the court recommends that defendants' motion (ECF No. 45) be GRANTED.

<h3>I.      Procedural History</h3>

In February of 2021, plaintiff filed his first amended complaint regarding his conditions of confinement and treatment by various prison officials at Deuel Vocational Institution.  ECF No. 6.  By order filed January 31, 2023, the undersigned screened the first amended complaint and found that it stated claims for excessive force and retaliation against three of the named defendants—Correctional Officer Estrada, Correctional Officer Tovar, and Psych Clinician Bawari—as well as a distinct claim of cruel and unusual punishment against Estrada.  ECF No. 17 at 15.  The complaint did not state any other cognizable claims, and plaintiff was accordingly

given the option of proceeding on the first amended complaint as screened or amending the complaint. Id. Plaintiff opted to proceed on his cognizable claims and voluntarily dismissed all other claims and defendants. ECF No. 18.

Defendants moved to dismiss the complaint on the grounds that it was clear on the face of the complaint that plaintiff had failed to exhaust his claims. ECF No. 29. On March 18, 2024, the undersigned issued Findings and Recommendations (F&R) stating that "plaintiff's allegations in the complaint that he was threatened with physical harm if he filed or continued pursuing grievances he had already initiated related to the incidents at tissue are sufficient to make a claim that administrative remedies were unavailable to plaintiff." ECF No. 36 at 6. By order dated April 22, 2024, the Honorable Daniel J. Calabretta adopted the F&R in full and denied defendants' motion to dismiss without prejudice to filing a motion for summary on the issue of exhaustion. ECF No. 37.

Defendants filed the instant motion for summary judgment on December 5, 2024. ECF No. 45. Plaintiff has filed an opposition to the motion (ECF No. 51), to which defendants have replied. ECF No. 52.

## II.    Plaintiff's Allegations in First Amended Complaint

As noted above, plaintiff's first amended complaint asserts claims of excessive force and cruel and unusual punishment in violation of the Eighth Amendment, as well as retaliation claims in violation of the First Amendment. ECF No. 6. Specifically, plaintiff alleges that on December 10, 2020, defendant Bawari refused to remove plaintiff from the CCCMS mental health care program. ECF No. 6 at 8. Plaintiff filed an appeal about his request to be removed from the CCCMS program and claims to have been slapped by a female doctor during an interview about the appeal on January 5, 2021. Id. at 8-9. On January 12, 2021, plaintiff went to see Estrada and requested an appeal form so that he could file a grievance about his removal from CCCMS. Id. at 10. Plaintiff alleges that Estrada refused to provide the forms and when plaintiff said he would file a grievance about Estrada's refusal, Estrada said he would write plaintiff up for a rules violation. Id. When plaintiff responded that he would sue Estrada, Estrada punched plaintiff in the chest. Id. As a result of being punched, plaintiff had trouble breathing for several minutes

2

and later developed bruises and experienced pain in the area of the punch for several weeks.  Id. at 10-11.  The day after the incident, Estrada told plaintiff "[i]f I find out you put paperwork on me that punch is peanuts what I'll do to you."  Id. at 11.

On January 15, 2021, Bawari and Tovar came to plaintiff's cell in response to plaintiff's request to identify the woman who had slapped him on January 5, 2021.  Id. at 11.  Bawari told plaintiff that she did not know the woman's name and could not find it out, then told Tovar to "do something to him he keeps putting in paperwork pissing me and everybody off" before the two defendants walked away.  Id.  Tovar returned two minutes later and entered plaintiff's cell, telling him that he needed to stop "putting in paperwork" because it was "pissin everybody off and your gonna get hurt and not make it home."  Id. at 11-12.  Plaintiff then stepped toward Tovar, telling him "you don't tell me what to do," and Tovar responded by pushing plaintiff back, causing plaintiff to hit his head on the top bunk.  Id. at 12. When plaintiff began raising his hands toward Tovar, Tovar rushed plaintiff and put him in a chokehold before taking plaintiff to the ground.  Id. Tovar then got up, kicked plaintiff, and left the cell.  Id.  Upon leaving the cell, Tovar refused plaintiff's request for medical care and told him "I dare you 602 me."  Id.

Finally, on February 6, 2021, Estrada told plaintiff that he was going to have plaintiff put in a unit with inmates who had COVID-19 because plaintiff had filed an excessive force grievance against him.  Id. at 14.  The following day, plaintiff was moved to a unit that was being used to house inmates who had tested positive for COVID-19 and he was placed in a cell with an inmate who was still complaining of symptoms of the virus.  Id.  Upon his transfer, plaintiff immediately began feeling symptoms of COVID-19, which he reported to medical.  Id.

In his complaint, plaintiff alleged that he did not file grievances regarding the alleged incidents with defendants because they "were made unavailable because he was in imminent danger of serious physical injury."  Id. at 5.

III.    Motion for Summary Judgment Relating to Exhaustion of Plaintiff's Claims

A.    Defendants' Arguments

Defendants Estrada, Tovar, and Bawari argue that they are entitled to summary judgment because plaintiff failed to exhaust his administrative remedies by submitting any grievances

relating to the incidents plaintiff alleges took place between December 2020 and February 2021. ECF No. 45.  Defendants argue plaintiff's allegation that the grievance process was unavailable to him due to threats of imminent harm by defendants is belied by plaintiff's deposition testimony that he filed "over 1,000" grievances during his incarceration, including many during the time period at issue, could not recall the individual defendants who allegedly physically harmed him or threatened to harm him, and could not recall when the grievance process was allegedly unavailable to him or any other specifics regarding the many grievances and appeals he filed.  Id. at 9 (citing ECF No. 45-3 at 53:12-24).  Because plaintiff continued to prolifically file both grievances and appeals throughout the relevant time and could not describe the alleged impediments to filing caused by defendants during his deposition, defendants contend that there is no evidence to support plaintiff's contention that fear of imminent harm excused his failure to properly exhaust his federal claims.  Id.

> B.      Plaintiff's Response

As discussed in greater detail below, plaintiff has filed an opposition brief (ECF No. 51) but failed to file a separate document in response to defendants' Separate Statement of Undisputed Material Facts (ECF No. 45-1) that identifies which facts are admitted and which are disputed, as required by Local Rule 260(b).  Although plaintiff is proceeding without the benefit of counsel, he is no longer an inmate litigant as he was released from confinement in 2021. Plaintiff also sought, and was granted, an extension of time to prepare his opposition to the motion for summary judgment.  ECF Nos. 48-49.  In general, "[p]ro se litigants must follow the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  Given plaintiff's pro se status, the court will consider additional facts from the record as appropriate, despite plaintiff's failure to be in strict compliance with the applicable local rules.  However, only those assertions in plaintiff's verified filings which have evidentiary support in the record will be considered.

////

////

4

In his opposition brief, plaintiff denies testifying that he filed over 1,000 grievances during his incarceration and could not recall the logistics of any past grievance filings.[1] ECF No. 51 at 1. Regardless, however, plaintiff argues that any other grievance he filed during his incarceration "that has no relation to this case's matter … cannot be considered so just on that the defendant's argument shall be denied." Id. Plaintiff reiterates his claim that "administrative remedies were made unavailable due to threats by named defendants in this case" which put his life and safety in jeopardy, and the "administrative process [is] moot if claimant [is] under threats." Id. at 2 (citing Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008); McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015)).

IV.    Legal Standards

A.    Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

---

[1] To the extent plaintiff seeks to raise new First Amendment claims or present other arguments regarding the merits of plaintiff's claims in his opposition brief, these will not be addressed. Defendants' motion for summary judgment is based solely on their assertion that plaintiff failed to exhaust his administrative remedies.

5

Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).[2]

V.    Legal Standards for Exhaustion

A.    Exhaustion under the Prison Litigation Reform Act

Because plaintiff's claims concern the conditions of his confinement, they are subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."  Ross v. Blake, 578 U.S. 632, 638 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos,

---

[2]  Because plaintiff has been out of custody for several years, defendants were not required to serve plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment.  Cf. Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc).

7

103 F.3d 767, 778 n.5 (9th Cir. 1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'" Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the defendant must produce evidence showing that a remedy is available "as a practical matter," that is, "it must be capable of use; at hand." Albino, 747 F.3d at 1171 (citation and internal quotations marks omitted). "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Ross, 578 U.S. at 639. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. (citation omitted).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion'" (quoting Jones, 549 U.S. at 218)).

On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. Albino, 747 F.3d at 1172. If the defendant meets this burden, the plaintiff then "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. (citation omitted). "However, ... the ultimate burden of proof remains with the defendant." Id.

As long as some potential remedy remained available through the administrative appeals process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies. Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."

8

Ross, 578 U.S. at 643. "First, . . . an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth, 532 U.S. at 736). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168.

        B.      California Regulations Governing Exhaustion of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in the California Code of Regulations. Because the parties do not dispute that plaintiff did not file any grievances or appeals relating to the alleged incidents involving defendants, it is unnecessary to discuss those standards in detail here.

In summary, for grievances initiated on or after June 1, 2020,[3] the process was comprised of two levels of review for most types of appeals and the regulations allowed prisoners "to dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." Cal. Code Regs. tit. 15, § 3481(a) (2020). The two levels of review for inmates include (1) the Office of Grievances at the institution level and (2) the Office of Appeals in Sacramento. Id. at § 3481-83, 3485. Inmates must submit their claims within 30 days of discovering an adverse policy decision, action, condition, or omission by CDCR. Id. at § 3482(b). Similarly, inmates must submit their written

---

[3] Beginning January 5, 2022, another version of the regulations went into effect. However, since plaintiff did not submit any grievances related to the claims in this case to which that version of the regulations would apply, those procedures will not be addressed.

appeals to the Office of Appeals within 30 days of discovering the decision from the Office of Grievances.  Id. at § 3485(a), (b).

### VI.    Evidentiary Issues and Undisputed Material Facts

#### A.    Plaintiff Failed to Comply with Local Rule 260(b)

As noted, plaintiff neither reproduced defendants' Separate Statement of Undisputed Facts (DSUF), nor admitted or denied those facts.  Nor did plaintiff file his own concise statement of disputed facts.  Because plaintiff did not comply with local rule 260(b), the court deems plaintiff to have admitted the validity of the facts contained in defendants' statement, except as otherwise discussed.  Additional facts have been taken from plaintiff's verified filings or the deposition transcript as appropriate.  See, e.g., Beard v. Banks, 548 U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (court is to consider evidence submitted by pro se prisoner in opposition to summary judgment only to the extent it is based on personal knowledge and "attested [to] under penalty of perjury" as true and correct).

#### B.    Undisputed Material Facts

The parties agree that at all relevant times, plaintiff was a California prison inmate housed at the Deuel Vocational Institution.  As discussed above, title 15 of the California Code of Regulations provides an administrative appeals process that permits inmates to submit a written grievance to dispute a policy, decision, action, condition, or omission by the CDCR or CDCR staff.  It is also undisputed that plaintiff did not utilize this process to file any grievances relating to the alleged incidents involving defendants before filing his civil rights complaint.

Defendants identified the following eight "Undisputed Material Facts" based plaintiff's deposition testimony to establish that plaintiff was not in any imminent danger of serious injury for filing administrative grievances around the time of his interactions with defendants:

Fact 1:  During his August 5, 2024 deposition, Plaintiff stated that someone named Esparza[4] had threatened him with physical injury for filing grievances, but

---

[4] Although defendants' motion for summary judgment is not a model of clarify, defendants

10

that he did not recall "if that's a [expletive redacted] man or a dude or a [expletive redacted] [woman]."

Fact 2:  Plaintiff later stated that Esparza was a [expletive redacted] [woman]," and that the threat had occurred on October 13, 2020.

Fact 3:  When Defendants' counsel noted that during January 2021 alone, Plaintiff had filed four grievances against prison employees, Plaintiff confirmed that he was not concerned about physical injury "from those monkeys obviously."[5]

Fact 4:  When asked about all of the grievances that he had filed in January 2021, Plaintiff stated that he could not remember how many he had filed that month, but that he "got over 1,000 of them [expletive redacted] probably."

Fact 5:  Defendants' counsel then asked how Plaintiff was able to file grievances about employee performance in February 2021 if he was being threatened for filing appeals.  Plaintiff responded by stating that "the common stupid ass citizen that you would try to present this to in a [expletive redacted] jury wouldn't understand that.  So guess what.  It ain't going down for you.  It ain't going down."[6]

Fact 6:  Plaintiff further stated that the grievance process was available "for some situations," but "for some situations, it wasn't."  When asked in what situations the process was not available, Plaintiff responded that he could not recall.

Fact 7:  Plaintiff also failed to describe any "specifics" that caused him to believe that the grievance process was unavailable to him.  Instead, he merely stated that he had "a right not to be threatened," and that it was his "First Amendment right to file a grievance."

Fact 8:  When Defendants' counsel noted that Plaintiff had filed 17 grievances in April 2021 and 19 grievances in May 2021, Plaintiff against stated that he cold not recall them, but added the following: "[j]ust say I filed 1,000.  I don't give a [expletive redacted].  Don't matter.  We're not going to sit here and go through 100 [expletive redacted] dates."

---

appear to be pointing out that plaintiff was mistakenly referring to defendant Estrada as "Esparza," who was a former defendant already dismissed from this case.  ECF No. 17 at 8-9.

[5] The court notes that upon review of the transcript, it is not clear who plaintiff was referring to as "monkeys," but presumably he was referencing other prison officials who had not threatened plaintiff with harm if he filed grievances against them.

[6] The court disagrees with defendants' characterization of plaintiff's testimony, which immediately followed plaintiff's statement that defense counsel was "trying to miss the point. I don't think – I know what you're up to."  In other words, an equally reasonable interpretation of plaintiff's statement is that a member of a jury may not understand what plaintiff perceived to be gamesmanship by defense counsel during the deposition.  Given the uncertainty regarding plaintiff's meaning, the court will disregard defendants' Fact 5 in its consideration of the evidence.

11

DSUF at 2-3 (internal citations omitted).

## VII.   Discussion

As noted above, the question before the court is whether plaintiff exhausted his administrative remedies concerning his Eighth and First Amendment claims against defendants. According to plaintiff's first amended complaint, the incidents with defendants took place between December 2020 and February 2021 (ECF No. 6) and plaintiff did not file any grievances regarding the alleged interactions.  Thus, the question is whether defendants have met their burden of establishing the existence of an available administrative remedy which plaintiff failed to exhaust.  Albino, 747 F.3d at 1172.

The threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable and thereby excuse a prisoner's failure to exhaust administrative remedies.  McBride v. Lopez, 807 F.3d 982, 987 (9th Cir. 2015).  In McBride, the Court of Appeals noted:

> To show that a threat rendered the prison grievance system unavailable, a prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance. If the prisoner makes this showing, he must then demonstrate that his belief was objectively reasonable. That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.

Id.[7] Physical violence or explicit threats of punishment for filing a grievance can satisfy the objective prong.  Sealy v. Busichio, 696 F. App'x 779, 780-81 (9th Cir. 2017).

Based on the evidence from both parties, including plaintiff's allegations in his verified

---

[7] In McBride, the plaintiff alleged that after an altercation with prison guards left him "bleeding and swelling," and the defendants "came by his cell and told him that he was 'lucky' because his injuries 'could have been much worse.'" McBride, 807 F.3d at 985.  The Court of Appeals held that while the plaintiff's view that defendant's words were a warning against filing a complaint was subjectively legitimate, it was not objectively reasonable because the defendants made no direct reference to the grievance process in their comments. Id. at 988. The court held the interaction between the guards and the plaintiff, though "hostile," did not render the grievance system unavailable. Id.

complaint (ECF No. 6), defendants' Statement of Undisputed Facts (ECF No. 45-1), plaintiff's opposition (ECF No. 51), and the court's review of the excerpts from plaintiff's deposition transcript (ECF No. 45-3), the court finds that plaintiff has not satisfied the subjective component of the McBride test, i.e., demonstrated that he actually believed that prison officials would retaliate against him if he filed grievances regarding his interactions with defendants.  During his deposition, plaintiff failed to identify any specific conduct by defendants that he claimed prevented him from filing a grievance relating to the incidents in his complaint.  Furthermore, although neither party has identified the precise number of grievances filed by plaintiff, it is undisputed that plaintiff continued to file numerous grievances and appeals complaining of prison staff performance throughout the period when he claims the process was unavailable to him due to safety concerns.

Specifically, in his verified first amended complaint, plaintiff contends that in January 2021, defendant Estrada punched plaintiff in the chest and then told him the next day "[i]f I find out you put paperwork on me that punch is peanuts what I'll do to you," which caused plaintiff to fear for his safety if he continued to pursue the grievance he filed regarding Estrada's excessive force. ECF No. 6 at 11.  In addition, plaintiff alleges that in February 2021, defendant Estrada told plaintiff that he was going to have plaintiff put in a unit with inmates who had COVID-19 because plaintiff filed an excessive force grievance against him, which he allegedly did the next day. Id. at 14.  During plaintiff's August 5, 2024 deposition, however, plaintiff did not appear to remember defendant Estrada.  Plaintiff incorrectly identified defendant Estrada as a woman named "Esparza" with whom plaintiff thought he had an October 13, 2020 interaction – a reference to a former defendant already dismissed from this case.  ECF No. 17 at 8-9; ECF No. 19.  Defendant did not recall the alleged incidents or threats of imminent harm or retaliation by defendant Estrada that plaintiff previously alleged took place in January and February 2021.  ECF No. 45-3 at 45:9-12, 46:6-9.

With respect to defendants Bawari and Tovar, plaintiff alleged in his complaint that in January 2021 Bawari instructed Tovar to "do something to him he keeps putting in paperwork pissing me and everybody off." Id. at 11.  Tovar later entered plaintiff's cell, telling him that he

needed to stop "putting in paperwork" because it was "pissin everybody off and your gonna get hurt and not make it home," leading to a physical altercation.  Id. at 11-12.  Upon leaving the cell, Tovar allegedly told plaintiff "I dare you 602 me."  Id.  Plaintiff alleged that he did not file grievances regarding these alleged incidents because they "were made unavailable because he was in imminent danger of serious physical injury."  Id. at 5. During plaintiff's deposition, however, plaintiff testified that he could not recall what situations during his incarceration made the grievance process unavailable to him, apart from general assertions of "hav[ing] a right not to be threatened" and "always [being] concerned about my safety."  ECF No. 45-3 at 53:15-16.  Plaintiff did not reference any of his specific interactions with the defendants or testify about how defendants' actions or threats rendered the grievance system unavailable.  ECF No. 45-3.

Moreover, it is undisputed that plaintiff continued to file many grievances complaining about prison officials and their performance throughout the time when plaintiff alleges that process was unavailable to him because he was afraid of retaliation.  When plaintiff was asked if he recalled filing eight grievances in January 2021, plaintiff said "I don't remember how many – I got over 1,000 of them . . . probably."  ECF No. 45-3 at 50:21-25.  Plaintiff testified that he could not recall filing eight grievances and four appeals in January 2021, six appeals in February 2021, eight appeals in March 2021, 17 appeals in April 2021, or 19 appeals in May 2021, but stated, "[j]ust say I filed 1,000… Don't matter."  ECF No. 45-3 at 50:21-25, 52:4-53:21.  Plaintiff testified that he may have filed as many as 1,000 grievances and "so goddamn many" appeals during his time in prison, but he believed the grievance process was unavailable to him in this particular case "because I have a right not to be threatened" and "[i]t only takes one."  ECF No. 45-3 at 51:11, 51:22.  Although plaintiff testified the grievance process was available "for some situations" and not for others, he could not recall or describe any specific situations that made the process unavailable.  Id. at 53:15-24.

The court finds that plaintiff's continued submission of numerous grievances and appeals regarding prison employee performance throughout the time at issue, even if his grievances did not directly address the three named defendants, undermines plaintiff's claim that he actually

14

believed prison officials would retaliate against him if he filed grievances or appeals.[8] If plaintiff was indeed afraid of threats by correctional staff to harm inmates who file grievances about other staff members, one would assume that plaintiff would not file "over 1,000" grievances and appeals complaining about staff conduct for fear of harm. Accordingly, plaintiff has not shown that administrative remedies were effectively unavailable to him, and the undersigned will recommend that the moving defendants' motion for summary judgment be granted.

VIII.    Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that defendants' motion for summary judgment be granted because you did not file any grievances about the incidents you describe in your complaint. The fact that you filed lots of other grievances about other things around the same time shows that the grievance process was available to you.

The district judge will have the final word about summary judgment, and will consider any objections to this recommendation that you submit within twenty-one days.

IX.    Conclusion

For the reasons set forth above, the undersigned finds that plaintiff did not exhaust his administrative remedies prior to filing the complaint. Accordingly, IT IS HEREBY RECOMMENDED that:

(1) Defendants' motion for summary judgment (ECF No. 45) be GRANTED, and

(2) Plaintif's First Amended Complaint (ECF No. 6) be DISMISSED without prejudice for failure to exhaust administrative remedies.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

---

[8] It is therefore unnecessary to consider the second step of McBride test, which concerns whether such a belief would be objectively reasonable.

15

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 8, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE